McIlvaine, J.
Was the property of the Northern Transportation Company, which was listed for taxation in the township of Brooklyn, subject to be taxed in the adjoining district of the city of Cleveland, or only in the township of Brooklyn, both taxing districts being in the county of Cuyahoga Í The listed property consisted chiefly of sixteen steamboats owned by the Transportation Company and employed in navigation on waters between Ogdensburg, New York, and Chicago, Illinois, and intermediate ports, including the port of Cleveland, the home port of the vessels, being the one nearest to the residence of the owner, and where the same were enrolled and licensed, in conformity to the laws of Congress in such case made and provided. In addition to the vessel property, there was also included among the listed property, the office furniture and other articles in the office of the company’s agency in the city of Cleveland.
The Transportation Company was duly organized in the year 1860, under the act of April 2d, 1859 (56 Ohio L. 115), which authorized any number of natural persons hot less than five to become a body corporate for the purpose named in the act, hy making and acknowledging a certificate, to be recorded by the secretary of state, specifying, among other things, “ the name of the county or place where the principal office of such company is situate.” In compliance with this requirement, the certificate of incorporation was as follows: “ That the place where the principal office of said company is situated is Brooklyn, in the county of Cuyahoga, and state of Ohio.” The office so designated was established in said Brooklyn (township) at the residence of one Pelton, where it remained until January, 1874. In the meantime, the limits of the city of Cleveland were so extended as to include the residence of Pelton, whereupon the stockholders of the company, at their annual meeting in January, 1874, ordered *455 that the principal office of the company should be removed to the house of one D. W. Hoyt, situate in said Brooklyn township, but without the limits of the city of Cleveland, which was done accordingly; since which time the annual meetings of the stockholders and the election of officers havé taken place at the residence of said Hoyt, who, at the date of listing the property for taxation, was vice:president of the company, and who, as the specially authorized agent of the company, returned its personal property for taxation to the assessor of said township. Aside from the holding of the annual stockholders’ meetings, the election of officers of the corporation, and the listing of property for taxation from year to year, the-record does not show any other business done at the1 office in Brooklyn. It does appear, however, that the affairs and business of the company are managed chiefly by agents in the cities of Chicago, Ogdensburg, Cleveland, and at other ports where its steamboats are accustomed to enter, and that its principal accounting office is at St. Albans, in the state of Yermont, where the president of the company resides, and the office of its directors is located..
Upon this state of facts, several questions, involved in the determination of the case, arise.
Eor many purposes, a corporation is regarded as having a residence—a certain and fixed domicil. In this state, where corporations are required to designate in their certificates of incorporation the place of the principal office, such office is the domicil or residence of the corporation. The principal office of a corporation, which constitutes its residence or domicil, is not to be determined by the amount of business transacted here or there, but by the place designated in the certificate. True, several offices may be established at the place specified in the certificate, as it is sufficient, under this statute, to specify the “ county or place.” But where a single office is established in the county, or township, or city, or other place designated, no further inquiry as to the identity of the principal office is admissible. And, as the statute does not require the office building to be specified, it is competent for the corporation to transfer its principal office from one building *456 to another, within the specified county or place, whenever its own convenience or advantage may be subserved. No doubt the exact location of the office should be open and notorious, so that a secret or fraudulent removal would not avail any puipose, yet the particular motive in making the change is not material, as, for instance, whether it was done to avoid taxation. If a natural person may change his residence for such purpose (and of this there can be no doubt), we see no reason why a corporation may not do the same. Such removal is not a fraud against tax laws, unless so declared by express legislation.
In the case of Western Transportation Co. v. Scheu, 19 N. Y. 408, which was similar to the present in many of its facts, it was held that the organic certificate of a corporation, in which it was required to designate the city or town and county in which the principal office for the management of the affairs of the company was to be situated, was conclusive as to the location therein designated as that of the principal office of the company. In that ease, the question arose under a statute which provided that “ all the jaersonal estate of every incorporated company, liable to taxation on its capital, shall be assessed in the town or ward where the principal office or place for transacting the financial concerns of the company shall be,” and in the opinion, Judge Selden well said, “ It is not important that a corporation should be taxed where it does the greatest amount of its business ; but it is important that the place where it is liable to be taxed should be known.” In that case, Tonawanda,. a small village in the vicinity of the city of Buffalo, was designated as the place of the principal office. The fact was that several places, especially Buffalo, had priority. over Tonawanda as principal localities for the business of the company, and it seems to have been conceded that the office was located at Tonawanda to avoid taxation in Buffalo. In relation to this fact, the court said, “ But it is no more inequitable or immoral for a corporation to do this, than for an individual to do substantially the same. A person may keep his office in Buffalo and transact business there to an unlimited amount, enjoying all the facili *457 ties and advantages which the enterprise and the expenditure of the city have afforded, and yet by residing without the city bounds avoid all municipal taxation. When this shall be practiced, either by individuals or corporations, to an extent which renders it a serious evil, it will be for the legislature to interfere.”
The statutory provisions governing this case are found in section 4 of the act of April 5, 1859, as amended April 8, 1865 (S. & S. 756).
The first part of this section designates the persons who shall list property for taxation ; but as no question is made as to the listing of the property of the Northern Transportation Company, we will quote only the latter part of the section which prescribes the township and town where property shall be entered and taxed.
“ And all real property, and merchants’ and manufacturers’ stock, and all the articles enumerated in the seventh section of this act and all the personal property upon farms and real property not in towns, shall be returned for taxation, and taxed in the township and town in which it is situated; all shares of stock in any national bank located within this state, whether held or owned by residents or non-residents of this state, shall be listed for taxation and taxed in the city, town and township in which the bank is located; and all other personal ■ property, moneys, credits or effects, shall be entered for taxation in the township and town in which the person to be charged with taxes thereon resided at the time of listing the same by the assessor, if such person reside within the county in which such property, moneys or effects were listed, if not, then such property, moneys and effects shall be entered for taxation, and taxed in the town and township where it was situated when listed.”
Section 7, to which reference is here made, is as follows:
“ Section VII. Such statement shall truly and distinctly set forth,
Eirst—the number of horses, and the value thereof;
Second—the number of neat cattle, and the value thereof:
*458 Third—the number of mules and asses, and the value thereof;
Fourth—the number of sheep, and the value thereof;
Fifth—the number of hogs, and the value thereof;
Sixth—every pleasure carriage of whatsoever hind, and the value thereof;
Seventh—the total value of all other articles of personal property which such person is, by this act, required to list; provided, that if such person shall exhibit to the assessor the animals or other articles of personal property above enumerated, the value of such property so exhibited may be omitted in such statement, and the assessor shall, in such cases, determine their value without requiring the oath of the person mating such statement as to the value thereof, and such person shall in that case be required only to make oath or affirmation to the value of the remainder of the personal property which he is required to list;
Eighth—every gold and silver watch, and the value'thereof;
Ninth—every pianoforte, and the value thereof ;
Tenth—the value of the goods and merchandise which such person is required to list as a merchant;
Eleventh—the value of the property which such person is required to list as a banker, broker, or stock jobber ;
Twelfth—the value of the materials and manufactured articles which such person is required to list asa manufacturer;
Thirteenth—the value of moneys and credits required to be listed, including all balances of book accounts ;
Fourteenth—the value of the moneys invested - in bonds,stocks, joint-stock companies, or otherwise, which such person is by this act required to list.”
S. & C. 1442.
The property of the Transportation Company was. properly listed and included in the statement under the 7th clause or subdivision of section 7. It is very clear, however, that steamboats and office furniture are articles not enumerated in the 7th section, although embraced within the general description of property contained in the 7th clause.
It therefore follows, that inasmuch as this property was not *459 merchants’ or manufacturers’ stock,” or “ personal property on farms and real property not in towns,” it was not required to be returned or taxed in the township or town in which it was situated, as provided in the first part of 4th section above quoted. On the other hand, if it be conceded, as is claimed by plaintiff in error, that the situs of this property was in the city of Cleveland, still, being other personal property than merchants’ and manufacturers’ stock, or articles enumerated in the 7th section of said act, or personal property on farms or real property not in towns, it is clear, under the last clause of said section 4, that it was properly returned by the assessor and should have been taxed in the township “ in which the person to be charged with taxes thereon, resided,” namely, in the township of Brooklyn—it being uncontroverted, that the Transportation Company was the person to be charged with taxes thereon, and as was above shown, the residence of the company was in the same county where the property was listed for taxation.
In thus deciding this case, we have been guided solely by the statute, without calling to aid the familiar doctrine of the common law, that the situs of personal property follows the domicil of the owner; for we admit, that if the owner had not resided in Cuyahoga county, the result would have been different. And on the other hand, if the situs of the property had been in another county, subject to be listed and taxed there under the statute, the residence of the owner in Cuyahoga county would not have given the latter county any right whatever to tax it. The residence of the owner in a particular taxing district fixes the place where his personal property is subject to taxation, only in case the property is required to be listed in the same county; in which case, if the property be other than merchants’ or manufacturers’ stock, articles enumerated in said 7th section, or personal property on farms or on real property not in towns, it must be taxed in the district of the owner’s residence, otherwise, it must be taxed where it is situated.
We fully agree with counsel for plaintiff in error, and the authorities cited by them, that the sitios of personal property, for the purposes of taxation, does not follow the domicil of the owner,unless so provided by local law. And we further agree with *460 them, that the situs of steamboats, navigating waters within and bordering upon different states, is that of the home port, which is ascertained by the residence of the owners, and is the port of enrollment and registration. And, of course, if personal property, by local laws, be made subject to taxation in the district of its situs, steamboats would be taxed in the district of the home port. But, by our statute, if the home port be in the same county where the owner resides, then they are subject to taxation in the township or town of the owner’s domicil.

Judgment affirmed.